**Habib Ibrahim MANSOOR, Petitioner,**

v.

**James MONTGOMERY et al.,
Respondents.**

**Civ. A. No. 85 74324.**

United States District Court,
E.D. Michigan, S.D.

Nov. 7, 1985.

Mark Jacob Thomas, Chicago, Ill., for petitioner.

L. Michael Wicks, Asst. U.S. Atty., Detroit, Mich., for respondents.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

Petitioner, Habib Ibrahim Mansoor, is a native and citizen of Iraq. He arrived in the United States on December 17, 1977 seeking political asylum. He was temporarily paroled into the United States pending the outcome of his application for asylum. His application was initially denied by the district director of the Immigration and Naturalization Service (INS) in August, 1978. Upon reconsideration in April, 1980, petitioner's application was granted. Asylees are interviewed annually to determine their continuing eligibility for asylum, 8 C.F.R. § 208.8(1), and in February, 1983 petitioner's asylum status was finally rescinded by the district director pursuant to 8 C.F.R. § 208.15(b).

Petitioner was then placed in exclusion proceedings. On October 6, 1983 an immigration judge (IJ) found petitioner excludable under sections 212(a)(14) and 212(a)(20) of the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(14) and 1182(a)(20). In addition, the IJ denied petitioner's application under sections 208(a) and 243(h) of the Act, 8 U.S.C. §§ 1158(a) and 1253(h) respectively, which provide for asylum if it is determined by the Attorney General that the alien is a refugee, and for withholding of deportation to any country where the alien's life or freedom would be threatened on account of race, religion or political opinion. Finding petitioner ineligible for relief under either section of the Act, the IJ ordered petitioner excluded and deported from the United States.

On appeal to the Board of Immigration Appeals (BIA), petitioner did not contest his excludability under sections 212(a)(14) and (20) of the Act. Rather, he argued that the IJ improperly denied his applications for asylum and withholding of deportation. On August 7, 1985 the Board dismissed petitioner's appeal.

On September 23, 1985 petitioner motioned the INS to reopen his case and stay his deportation until his motion to reopen was heard. Petitioner's motion to reopen realleged his claim of entitlement to asylum and withholding of deportation. Additionally, petitioner asserted as a ground for reopening that he is entitled to seek a suspension of deportation under section 244(a) of the Act, 8 U.S.C. § 1254(a). Section 244(a) provides for suspension of deportation of an alien who has been physically present in the United States and was of good moral character for a continuous period of seven years and whose deportation would result in extreme hardship to the alien, his citizen or lawfully admitted spouse, parent or child. Petitioner has a five year old, American-born son whose

mother, to whom petitioner is not married, is on public assistance. He alleged that the child would suffer extreme hardship if the emotional and financial support petitioner provides were lost through his deportation.

On the same day that he filed his motion to reopen with the INS, Mansoor petitioned this court for a writ of habeas corpus alleging that to deport him before the INS reviews his pending motions is a denial of due process. He requests this court to issue an order directing the district director of the INS to refrain from taking, holding and deporting him until all administrative proceedings are terminated.

█ The case is now before the court on defendants' motion for summary judgment. Defendants correctly argue that petitioner is ineligible for suspension of deportation under § 244 as the relief provided by the statute is available only to *deportable* aliens. *Excluded* aliens, like petitioner, do not fall within the purview of the statute. Thus, defendants argue that petitioner's ineligibility for the relief sought requires this court to deny his petition for a writ of habeas corpus.

[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission, ... and those who are within the United States after entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.' (citation omitted) The distinction was carefully preserved in Title II of the Immigration and Nationality Act. Chapter 4 subjects those seeking admission to 'exclusion proceedings' to determine whether they 'shall be allowed to enter or shall be excluded and deported.' (citation omitted) On the other hand, Chapter 5 concerns itself with aliens who have already entered the United States and are subject to 'expulsion' as distinguished from 'exclusion' if they fall within certain 'general classes of deportable aliens.' (citation omitted) Proceedings for expulsion under Chapter 5 are commonly referred to as 'deportation proceedings.' Parenthetically, the word 'deportation' appears also in Chapter 4 to refer to the return of excluded aliens from the country, but its use there reflects none of the technical gloss accompanying its use as a word of art in Chapter 5.

*Leng May Ma v. Barber,* 357 U.S. 185, 187, 78 S.Ct. 1072, 1073, 2 L.Ed.2d 1246 (1958).

In section 212(d)(5) of the Act, 8 U.S.C. § 1182(d)(5), Congress specifically provided that the Attorney General may temporarily parole an alien into the country, but "such parole ... shall not be regarded as an admission of the alien." When the purposes of the parole have been served, "the case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* "The parole of aliens is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status." *Leng May Ma,* at 190. *See also, Jean v. Nelson,* 472 U.S. ——, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).

Thus, the fact that petitioner has been in the United States since 1977 does not affect his status as an excludable alien. He was merely paroled into the country, not admitted, and courts apply the legal fiction that such aliens are theoretically at least, waiting at the border. Moreover, petitioner does not challenge his status of excludability. In his motion to reopen the exclusion proceedings, however, he claims eligibility for a stay of deportation under § 244 based on his continuous residence in the country for seven years during which he maintained good moral character and the resultant "extreme hardship" which would result to his son if deportation is effectuated.

Section 244(a) is a provision of Chapter 5 of the Act which covers deportation and adjustment of status of deportable aliens. Chapter 4 of the Act contains provisions relating to entry and exclusion. The Supreme Court has noted that the two chapters enumerate "separate administrative

procedures for exclusion and expulsion, separate provision for removal and transportation, and—most significantly—separate provisions for stays of deportation." *Leng May Ma,* at 189–90, 78 S.Ct. at 1074–75. Applying the Court's reasoning in *Leng May Ma* to the case before this court, the placement of § 244 squarely among the provisions of Chapter 5 relating to deportable aliens, rather than in Chapter 4, is evidence that Congress did not intend for this section to apply to excluded aliens. (*See,* 2 C. Gordon & H. Rosenfield, Immigration Law and Procedure § 7.9(a)(5) (rev. ed. 1985), "[S]uspension of deportation [under § 244] by its own terms relates only to aliens who are deportable. Therefore it is unavailable in exclusion proceedings.")

Any doubt regarding the statute's applicability to excluded aliens was resolved by the Court in *Landon v. Plasencia,* 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) in which the Court outlined some of the differences in the substantive rights afforded to the two classifications of aliens. The Court noted that a deportable alien, unlike an excluded alien, "can, within certain limits, designate the country of deportation . . .; he may be able to depart voluntarily, . . . avoiding both the stigma of deportation . . . and the limitations on his selection of destination . . .; or he *can seek suspension of deportation. . . .*" *Id.* at 26–27, 103 S.Ct. at 325–26 (emphasis added). (*See also, Castillo-Magallon v. INS,* 729 F.2d 1227, 28 [9th Cir.1984], "At an exclusion proceeding an alien is not entitled to seek a suspension of deportation.")

The provision cited by the Supreme Court for this proposition is section 242(e) of the Act, 8 U.S.C. § 1252(e) (1976 Ed. and Supp. V) [8 U.S.C.S. § 1252(e) ] which limits suspension of deportation to particular classes of deportable aliens under section 241 of the Act, 8 U.S.C. § 1251. The class of excluded aliens is specifically mentioned in section 241 but is not one of the classes to which section 242(e) refers as being eligible for suspension of deportation. The language of the Act and its interpretation by the Supreme Court leads this court to conclude that petitioner is ineligible for a stay of deportation under section 244, and it follows that the motion addressed to the INS to reopen his case on this basis must be denied as a matter of law.

Although petitioner has stated that he is not contesting the exclusion proceeding itself, nor the finding that he is excludable, it is not altogether clear whether petitioner also based his motion to reopen on an allegation that the IJ and BIA improperly decided his .claims of eligibility for asylum under § 208(a) and withholding of deportation under § 243(h). The motion states that the relief sought is that the case be reopened "to allow Petitioner to submit an Application for Suspension of Deportation." Yet, the motion recites at length petitioner's fears of religious and political persecution should he be forced to return to Iraq. Assuming petitioner is raising this claim, his motion to reopen the case on these grounds must nevertheless fail as well.

■ The decision whether to grant political asylum under § 208(a) or to withhold deportation under § 243(h) lies within the discretion of the Attorney General. Section 3.2 of the Code of Federal Regulations provides that a motion to reopen "for the purpose of affording the alien an opportunity to apply for any form of discretionary relief" shall not be granted "if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing unless the relief sought is on the basis of circumstances which have arisen subsequent to the hearing."

■ Petitioner's motion to reopen does not allege circumstances increasing the likelihood of a threat to his life or freedom which have arisen since the BIA proceeding. Thus, the administrative regulations preclude the BIA from reopening petitioner's case and his motion to reopen must be denied by the INS.

As a result of the BIA's decision, petitioner is under a final order of deportation. The filing of a motion to reopen does not serve to stay the execution of any decision

made in the case or to extend a previously set departure date. 8 C.F.R. § 103.5. Petitioner's constitutional challenge alleges that failure to stay his deportation until his motion to reopen is heard will result in a denial of due process. Petitioner is not challenging the constitutionality of any provision of the Act or the process itself; nor is he challenging the constitutionality of any action taken in the proceedings below. He is merely stating an entitlement to pursue all administrative procedures prior to deportation. This court has found, however, that as a matter of law, his motion to reopen is fatally defective and must be denied by the BIA. Therefore, an order directing the INS to stay petitioner's deportation until the motion is heard would be an exercise in futility.

Petitioner has already received the full benefit of the process prescribed by the statute in relation to the claims raised in his motion to reopen. Under these circumstances, this court will not grant a stay of deportation.

For the foregoing reasons, IT IS HEREBY ORDERED that the petition for writ of habeas corpus is denied and defendant's motion for summary judgment is granted.

IT IS SO ORDERED.