**PROGRESSIVE INSURANCE COMPANY (PAGO PAGO) LIMITED, Plaintiff,**

**v.**

**DEPARTMENT OF PUBLIC SAFETY FIRE BUREAU of the AMERICAN SAMOA GOVERNMENT and AMERICAN SAMOA POWER AUTHORITY of the AMERICAN SAMOA GOVERNMENT, jointly and severally, Defendants.**

High Court of American Samoa
Trial Division

CA No. 36-04

May 19, 2005

Before RICHMOND, Associate Justice; SAGAPOLUTELE, Associate Judge; and TAPOPO, Associate Judge.

Counsel: For Plaintiff, William H. Reardon and Devin A. McRae, *Pro Hac Vice*
For Defendant American Samoa Government, Julie Sione, Assistant Attorney General
For Defendant American Samoa Power Authority, Jeffrey Waller

## ORDER RATIFYING SUBSEQUENT AFFIRMATION OF DEPOSITION TESTIMONY, COMPELLING INTERROGATORY RESPONSES, AND DENYING LEAVE TO FILE THIRD-PARTY COMPLAINT

### Introduction

This negligence action arises from a fire on April 20, 2002, that destroyed property insured by Forsgren, Ltd., Inc. ("Forsgren") at the Laufou Shopping Center in Nu'uuli. Plaintiff Progressive Insurance Limited ("Progressive") brings this action against Defendants American Samoa Power Authority ("ASPA") and Department of Public Safety Fire Bureau of the American Samoa Government ("ASG") as insurer of the property, by virtue of payment of insurance proceeds to Forsgren.

In briefings and at hearings, the parties raised several motion issues that we now address relating to the admissibility of deposition testimony, the timeliness of interrogatory responses, and the joinder of Forsgren as a third-party.

## Discussion

### I. Admission of Deposition Testimony

■ Pointing to American Samoa Rule of Evidence 604, that "[a]n interpreter is subject to . . . the administration of an oath or affirmation that he will make a true translation," ASPA argues that because the Samoan-English interpreter Niuinitone Tamaalii Sione ("Sione") did not take an oath or affirmation that he would make a true translation of testimony made during the deposition of Fire Chief Tagiilima Moana ("Moana"), the transcripts of that deposition as presently submitted by Progressive are not admissible.

We disagree, and follow the decision of *United States v. Kramer*. In *Kramer*, defendants moved to exclude deposition testimony under Rule 604 on the basis that the record did not reflect that the translators were sworn at the deposition. 741 F.Supp. 893, 894 (S.D.Fla. 1990). Although the court did not deny that the testimony was initially excludable, it reasoned that if the defense can raise an objection at any time before the case is submitted to the jury and preserve its objection, so too, can a translator be subsequently sworn, and his translation ratified, upon inquiry by a judge before offering the allegedly infirm testimony at trial. *Id.* at 895; *see also United States v. Perez*, 651 F.2d 268, 273 (5th Cir. 1981). Although in *Kramer*, the court did so by conducting an evidentiary hearing to analyze the truthfulness of the translation based upon the qualifications of the translators, it noted that "a hearing is seldom required" and that the court need only "satisfy itself as to the qualifications of the translators to translate the languages involved." 741 F. Supp. at 894.

In the present case we find no need to conduct an evidentiary hearing on this issue and ratify Sione's translation. On February 1, 2005, we received the affidavit of Sione, in which Sione "being first duly sworn upon oath" stated that "I affirm that I translated English to Samoan and Samoan to English faithfully and correctly" as necessary in the depositions of Moana and others. Sione is a native Samoan speaker, is qualified to serve and serves as an interpreter for the High Court of American Samoa. In this role he is regularly relied upon for truthfully translating in court witness testimony. Having had the benefit of Sione's service, we do not doubt his abilities in rendering accurate Samoan-English translations, and further, neither the court nor the parties question that he was not impressed to do so during the depositions at issue. *See* American Samoa Rule of Evidence 603; *see also United States. v. Pluta*, 176 F.3d 43, 51 (2d Cir. 1999) (allowing translated testimony where no interpreter oath taken where defendant had not shown that any shortfall caused him prejudice, or shown that the interpreters failed to interpret

127

literally or accurately); *Haidar v. Coomey* 401 F. Supp. 717, 721-22 (D.C. Mass. 1974) (noting in the immigration law context that although failure to swear in an interpreter is a violation, the omission was harmless error in that interpreter had been used frequently by the Immigration and Naturalization Service and asserted under oath that her translation was accurate).

## II. Progressive's Motion to Compel

■ Progressive moves pursuant to T.C.R.C.P. 37(a) to compel further interrogatory responses from ASG to its first, second, and third sets of interrogatories. When a party responds to interrogatories, the party is under a duty to make reasonable inquiries in order to provide the information sought in the interrogatories. *Continental Illinois Nat'l Bank & Trust Co. v. Caton*, 136 F.R.D. 682, 684 (D.Kan.1991). A party may not defer answering or refuse to answer an interrogatory by suggesting that the information may be forthcoming, as such a response is regarded as a failure or refusal to answer the interrogatory. *Oleson*, 175 F.R.D at 572. T.C.R.C.P. 37(a)(2) provides that if a party fails to answer an interrogatory, the discovering party may move for an order compelling an answer.

Although Progressive acknowledges that ASG has provided several requested interrogatory responses subsequent to its filing of this motion, it still seeks, as of February 3, 2005, supplemental responses to 11 interrogatories. ASG has stated that it will disclose information as it becomes available to it. We do not find ASG's response to sufficiently demonstrate that it has exhausted available options to acquire the requested information. In providing answers to interrogatories, a party has a duty to provide not only the information it has, but also the information within its control or otherwise obtainable by it. *See In re Auction Houses Antitrust Litigation*, 196 F.R.D. 444, 445 (S.D.N.Y. 2000). Here, Progressive has shown that responses given in the deposition testimony of Chief Moana suggest that ASG is capable of obtaining answers to the requested interrogatories. Therefore, to the extent that any of the requested interrogatories remain unanswered, we grant Progressive's motion to compel and require ASG to answer the interrogatories fully and completely by June 15, 2005, five days before Progressive's next motion to compel discovery is scheduled for hearing.

■ We do not, however, award Progressive fees and expenses. Under T.C.R.C.P. 37(a)(4), if the motion to compel is granted, the court shall require the party whose conduct necessitated the motion to pay the moving party reasonable expenses and attorney's fees incurred in obtaining the order unless the court finds the opposition to be justified or that other circumstances make an award of expenses unjust. *See also*

FED. R. CIV. P. 37. Evaluation of the circumstances rendering an award of expenses just or unjust is committed to the sound discretion of the court. *See In re Multi-Piece Rim Products Liability Litigation*, 653 F.2d 671, 680 (D.C. Cir. 1981). In exercising discretion to award sanctions under this Rule, a court may consider: (1) the willfulness or bad faith of the non-compliant party, or the reasons for non-compliance, (2) the efficacy of lesser sanctions, (3) the prejudice to the moving party, (4) whether the non-compliant party had been warned of the possibility of sanctions, and (5) the court's need to deter discovery abuse and efficiently control its docket. *See In re Sumitomo Copper Litigation*, 204 F.R.D. 58, 60 (S.D.N.Y. 2001).

Although we do not condone ASG's delay in providing prompt interrogatory responses, neither do we conclude that sanctions are appropriate at this time. In the current case, the discovery delays do not appear to be the result of bad faith conduct by ASG, but are rather the result of practical difficulties limiting ASG's ability to provide more timely responses. In preparing for this case, we cannot ignore the fact that not only has the Attorney General's office faced ongoing staffing shortages, but so too has been the currently assigned assistant attorney general, who was only recently assigned to the case. Because such delays are practical, as opposed to tactical in nature, we do not feel that the conduct complained of is sufficiently abusive to warrant sanctions. That being said, however, by granting Progressive's motion to compel, ASG should now be aware of the Court's concern, and will presumably take affirmative steps to prevent any recurrence of delays in order to avoid the future risk of sanctions.

### III. Third-Party Joinder and Subrogation

ASPA and ASG seek leave to file a third-party complaint against Forsgren, the party insured by Progressive, maintaining that Forsgren's negligence was a contributing factor to the damages and claims Progressive asserts against ASPA and ASG and therefore should be joined under T.C.R.C.P. 14(a) as a party who is or may be liable for all or part of Progressive's claim against ASPA or ASG. We disagree.

Under the doctrine of subrogation, once the insurer has paid a claim to the insured, the insurer "stands in the shoes" of the insured to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss. *See, e.g., Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d Cir. 1999); *see also United States v. Munsey Trust Co.*, 332 U.S. 234, 242 (1947). The doctrine of subrogation is based upon principles of equity. *Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 105 (2d Cir. 1992). By paying an insured's loss, the insurer may in turn compel the party who has caused

the damage to reimburse the insurer for the payment the insurer has made. *Id.* at 106. When a party is subrogated to the rights of another, the subrogated party is substituted for, or put in the place of, the party whose rights he is asserting. *General Acc. Ins. Co. of America v. Fidelity and Deposit Co. of Maryland*, 598 F. Supp. 1223, 1248 (D.C. Pa. 1984). Therefore, by succeeding to all the procedural rights and remedies possessed by the subrogor and becoming subject to any claims or defenses which may have been be raised against the subrogor, the subrogee is no longer asserting the subrogor's rights, but is asserting its own rights. *Id.*; *see Servidori v. Mahoney*, 129 A.D.2d 944, (N.Y. App. Div. 1987).

We find the case of *Wausau Underwriters Ins. v. Shisler*, cited both by Progressive and by ASPA and ASG, to be particularly informative with regard to the facts and issues raised in this case. 1999 WL 529250 (E.D.Pa 1999). In *Wausau*, a fire occurred at a facility owned by Halpern and Company, Inc. and Green Circuits, Inc. ("Green and Halpern"), causing damage to the property. *Id.* at *1. The plaintiff, an insurer, provided the defendant with payments for the fire damage in accordance with the terms of their insurance policies, and in turn became subrogated to the rights of Green and Halpern to recover losses from a potentially responsible third-party. After the insurer, as subrogee, filed suit against defendant, defendant sought leave to file third-party complaints against Green and Halpern, pursuant to FED. R. CIV. P. 14(a) on the basis that Green and Halpern were comparatively negligent and thus liable for all or part of the plaintiff's claim. *Id.* at **1-2. The court denied defendant's motion concluding that defendant had not stated a claim upon which relief could be granted. The court reasoned that:

> [a]ny finding of responsibility on the part of Green and/or Halpern does not create a liability to Wausau, but rather, would merely serve to eliminate or reduce Wausau's recovery from Shisler [defendant]. In other words, Green and Halpern can never be liable to pay damages to Shisler for the losses, which were actually sustained by Green and Halpern. As an insurer cannot subrogate against *its* own insured, Wausau has no claim against Green or Halpern for which either could be liable.

*Id.* at *4.

In the present case, Progressive states that Forsgren submitted a timely claim for coverage in the amount of $5,476,000.00 and that, by virtue of its payment of insurance proceeds to Forsgren, it is subrogated to claims against defendants as parties potentially liable for the loss. We agree. As in *Wausau*, then, ASPA and ASG cannot join Forsgren, the insured,

as a third-party. ASPA and ASG seek to establish Forsgren's negligence to reduce or eliminate their own liability on the grounds that the fire loss was caused by Forsgren's negligent conduct. However, because Forsgren cannot be liable for damages either to Progressive or to ASPA or ASG, ASPA and ASG have merely asserted a defense to their own liability, but have not stated a claim against Forsgren upon which relief can be granted.

Nevertheless, the end result may be a distinction without a difference. ASPA and ASG may pursue the issue of Forsgren's negligence in this case without joining Forsgren as a party. Because Progressive, as subrogee, is subject to the same defenses which ASPA and ASG could have raised against Forsgren, to the extent that ASPA and ASG can successfully establish Forsgren's negligence, we will be required to eliminate or reduce Progressive's recovery from ASPA and ASG accordingly. *See Nat'l Fire Ins. Co. of Hartford v. Daniel J. Keating Co.*, 35 F.R.D. 137 (W.D. Pa. 1964).

■ In addition, in supplemental briefing requested by the Court, ASPA and ASG contend that Progressive, as subrogee, currently seeks excessive damages. ASPA and ASG note that Progressive asserts in its complaint that Forsgren's insurance claim was $5,476,000.00. Progressive, however, seeks the larger sum of $6,000,000.00 in total damages with $5,476,000.00 for damages to the building, stock and trade, plant and equipment plus $524,000.00 for lost adjustment expenses. We note, as have other courts, that because a subrogee "stands in the shoes" of his subrogor, it "acquires no greater rights than the one whose claim he assumes by reason of the subrogation agreement." *Truck Ins. Exchange v. Bd. of County Rd. Comm'rs of Montcalm County*, 244 F. Supp. 782, 783 (D.C. Mich. 1965); *see also United States v. California*, 507 U.S. 746, 756 (1993) ("[t]he subrogee, who has all the rights of the subrogor, usually cannot acquire by subrogation what another whose rights he claims did not have."); *Phoenix Ins. Co. v. Erie & W. Transp. Co.*, 117 U.S. 312, 321 (1886) ("the insurer can take nothing by subrogation but the rights of the assured."). Therefore, to the extent that Progressive seeks damages as subrogee that exceed those that would have been available to Forsgren, Progressive is ineligible from pursuing such relief.

### Order

1. We ratify interpreter Sione's subsequent affirmation of the translation of Moana's deposition testimony for purposes of evidentiary admissibility during trial.

2. We grant Progressive's motion to compel responses to interrogatories but find that the circumstances do not warrant an award fees and expenses.

3. We deny ASPA's and ASG's motions to seek leave to file a third-party complaint against Forsgren, but hold that Progressive as subrogee cannot pursue damages in excess of those that would have been available to subrogor Forsgren.

It is so ordered.